IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-02326-PSF-CBS

ALEXANDER RIST, derivatively on behalf of STARTEK, INC.,

     Plaintiff,

v.

A. EMMET STEPHENSON, JR.,
WILLIAM E. MEADE, JR.,
MICHAEL W. MORGAN,
EUGENE L. MCKENZIE, JR.,
PAMELA S. OLIVER,
TONI E. STEPHENSON,
ED ZSCHAU,
HANK BROWN,
MICHAEL S. SHANNON,
KAY NORTON,
ALBERT C. YATES, and
LAWRENCE ZINGALE,

     Defendants,

- and -

STARTEK, INC., a Delaware corporation,

     Nominal Defendant.

---

Civil Action No. 05-cv-02600-REB-PAC

GEORGE STRASSNER, derivatively on behalf of STARTEK, INC.,

     Plaintiff,

v.

A. EMMET STEPHENSON, JR.,
WILLIAM E. MEADE, JR.,
MICHAEL W. MORGAN,
EUGENE L. MCKENZIE, JR.,

PAMELA S. OLIVER,
TONI E. STEPHENSON,
ED ZSCHAU,
HANK BROWN,
MICHAEL S. SHANNON,
KAY NORTON,
ALBERT C. YATES, and
LAWRENCE ZINGALE

     Defendants,

- and -

STARTEK, INC., a Delaware corporation,

     Nominal Defendant.

---

## ORDER ON MOTIONS TO DISMISS

---

This matter is before the Court on Nominal Defendant StarTek, Inc.'s ("StarTek")

Motion to Dismiss Plaintiffs' Consolidated Shareholder Derivative Complaint (Dkt. # 11)

and Defendants A. Emmet Stephenson, Jr., William E. Meade, Jr., Michael W. Morgan,

Eugene L. McKenzie, Jr., Pamela S. Oliver, Toni E. Stephenson, Ed Zschau, Hank

Brown, Michael S. Shannon, Kay Norton, Albert C. Yates, and Lawrence Zingale's (the

"Individual Defendants") Motion to Dismiss Plaintiffs' Consolidated Shareholder

Derivative Complaint (Dkt. # 13), both filed on April 18, 2006.  The motions are fully

briefed and ripe for disposition.

## I.  BACKGROUND

On November 16, 2005, and December 22, 2005, respectively, Plaintiffs

Alexander Rist and George Strassner each filed a derivative lawsuit on behalf of

StarTek, a corporation headquartered in Denver and incorporated under Delaware law. On March 9, 2006, these lawsuits were consolidated into one action (Dkt. # 8), and on March 29, 2006, plaintiffs filed a Verified Consolidated Shareholder Derivative Complaint and Demand for Jury Trial (the "Complaint") (Dkt. # 9).  In the Complaint, plaintiffs assert causes of action against certain officers and directors of StarTek for breach of fiduciary duty, waste of corporate assets, abuse of control, gross mismanagement, and unjust enrichment.  The factual background described below is based entirely on the allegations in the Complaint.

Founded in 1987, StarTek provides various business process outsourcing services.  Compl. ¶ 5.  At the time plaintiffs originally filed their derivative complaints, StarTek's Board of Directors (the "Board") consisted of five individuals:  Steven Butler, who is not named as a defendant in this suit, and Defendants A. Emmett Stephenson, Kay Norton, Albert C. Yates, and Ed Zschau.  *Id.* ¶ 107.  Defendant A. Emmett Stephenson co-founded StarTek and serves as the chairman of the board, a position he has maintained since the company's formation.  *Id.* ¶ 38.  Defendants Yates, Norton, and Zschau have been outside directors of StarTek since 2004.  *Id.* ¶¶ 47–49.  These three directors (the "Outside Directors") were also members of StarTek's Audit Committee during part of the "relevant period," described in the Complaint as August 2002 to the present.  *Id.* ¶¶ 1, 107(d).

Plaintiffs' Complaint focuses on certain actions taken by StarTek's officers and directors during the relevant period.  Plaintiffs allege that StarTek opened several new call center facilities in 2003 even though no business need or demand justified building

these facilities, and that Stephenson controlled the Board to ensure approval of this expansion.  *See* Compl. ¶¶ 8, 9, 31, 96.  In conjunction with the opening of these new facilities, the company issued press releases that "paint[ed] a false picture of high demand for its services and new contracts for its pipelines."  *Id.* ¶ 13; *see also id.* ¶¶ 14–18.  As a result, the company's stock price rose, and some defendants, not including any of the Outside Directors, sold StarTek stock during this time.  *Id.* ¶¶ 16–18.

In February 2004, StarTek filed a registration statement for a public offering of StarTek stock.  *Id.* ¶ 22.  The registration statement discussed high demand for the company's services.  *Id.*  Shortly thereafter, it was announced that AT&T Wireless ("AWE"), StarTek's biggest customer, was being acquired by Cingular, which jeopardized StarTek's contract with AWE and the public offering.  *Id.* ¶ 23.  StarTek renegotiated its contract with AWE and filed a revised registration statement in April 2004 that "did not disclose that StarTek was forced to desperately lower its pricing in return for the contract extension."  *Id.* ¶ 24.  StarTek's management continued to make public statements during the summer and fall of 2004 representing that its sales were strong and that demand for services was continuing to increase.  *See id.* ¶¶ 26, 28.

StarTek's stock price began to fall in early 2005 as information emerged that its sales were not as strong as had been represented.  *Id.* ¶ 29.  Defendant William E. Meade, Jr., who served as CEO during the relevant period, resigned on February 18, 2005.  *Id.* ¶ 30.  StarTek's stock value continued to drop in response to this news and as more information about the company came to light, including facts about the terms of

the renegotiated AWE contract, a lack of new clients, the relative inexperience of the sales team, and decreased revenues.  *Id.* ¶¶ 30–34.

On July 8, 2005, the first of two class action suits was brought against StarTek and certain current and former officers, directors, and shareholders, alleging violations of the Securities Exchange Act.  Ex. 4 to Fukumura Decl. (Dkt. # 12).  The lawsuits were subsequently consolidated and are currently pending in this Court.  Neither Butler nor the Outside Directors are named as defendants in the class action.[1]

As indicated above, plaintiffs assert six causes of action in the Complaint based on the alleged improper statements and insider trading described above:  (1) insider trading and misappropriation of information in violation of their fiduciary duties against Defendants Stephenson, Morgan, Toni Stephenson, Oliver, and Meade; (2) breach of fiduciary duty for failing to exercise good faith, loyalty, fair dealing and proper oversight against all Individual Defendants; (3) abuse of control against all Individual Defendants; (4) gross mismanagement against all Individual Defendants; (5) waste of corporate assets against all Individual Defendants; and (6) unjust enrichment against all Individual Defendants.  Thus, in essence, plaintiffs contend that the press releases and the registration statement overstated StarTek's financial position and prospects, which caused the company's stock to artificially soar and then ultimately plummet after some

---

[1] Defendants have filed a Request for Judicial Notice (Dkt. # 15), asking the Court to take judicial notice of, among other documents, the consolidated complaint in the class action, styled *West Palm Beach Firefighters' Pension Fund v. StarTek, Inc., et al.*, No. 05-cv-01265-PSF-MEH.  Plaintiffs have no objection to the request with respect to the complaint, which is an appropriate document for judicial notice.  *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 794 n.17 (10th Cir. 1998) (taking judicial notice of an order issued by another court, which is a matter of public record).  Accordingly, the Court takes judicial notice of the consolidated class action complaint.

defendants had reaped the benefit by selling their stock at the inflated prices. *See* Compl. ¶¶ 31–34.

## II.  STARTEK'S MOTION TO DISMISS

StarTek filed a motion to dismiss the Complaint ("Def.'s Mot.") pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and the substantive requirements of Delaware law.  StarTek argues the Complaint should be dismissed because plaintiffs failed to make a demand on the Board before filing this derivative action and failed to allege with particularity facts showing that demand would have been futile and is thus excused. *See* Def.'s Mot. at 1, 5–6.  StarTek further argues the Complaint fails to sufficiently allege in accordance with Rule 23.1 that plaintiffs were shareholders during the relevant period. *Id.* at 23–24.  In a separate motion to dismiss, the Individual Defendants join StarTek's motion and also assert that, with respect to each cause of action, plaintiffs have failed to state a claim upon which relief can be granted under F.R.Civ. P. 12(b)(6).

### A.  Demand Requirement

Federal Rule of Civil Procedure 23.1 establishes the procedural requirements for bringing a shareholder derivative suit in federal court.  A derivative complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and, if necessary, from the shareholders or members, *and the reasons for the plaintiff's failure to obtain the action or for not making the effort.*"  F.R.Civ.P. 23.1 (emphasis added).  However, Rule 23.1 does not identify the substance of what, specifically, constitutes a valid excuse for shareholders' failing

to make a demand on a board of directors before filing their own derivative suit; rather, federal courts "must apply the demand futility exception as it is defined by the law of the State of incorporation." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09 (1991). Because StarTek is incorporated in Delaware, the parties agree that Delaware law controls the demand futility analysis in this case. Def.'s Mot. at 6; Pls.' Opp. at 12.

Under Delaware law, the demand requirement is a "'substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation, and to control any litigation which does arise.'" *Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 2006) (quoting *Aronson v. Lewis*, 473 A.2d 805, 809 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000)). A demand requirement "gives the directors—even interested, non-independent directors—an opportunity to consider, or reconsider, the issue in dispute . . . [which] may be their first knowledge that a decision or transaction they made or approved is being questioned." *Kenney v. Koenig*, 426 F. Supp. 2d 1175, 1181 (D. Colo. 2006) (quoting *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001) (alteration in original)).

Generally, to bypass the demand requirement and prevent dismissal for failure to make such a demand, a plaintiff must make a particularized showing that demand on the board would have been futile, *i.e.*, that the board could not have impartially considered and acted on the demand. *Haber v. Bell*, 465 A.2d 353, 357 (Del. Ch. 1983). Specifically, plaintiffs must allege particularized facts creating a reasonable doubt that "(1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgement."

7

*Aronson*, 473 A.2d at 814.  However, this test is not appropriate where the challenged conduct does not involve a specific decision of the board of directors, as is the case here.  *See Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993) (reasoning that "[t]he absence of board action . . . makes it impossible to perform the essential inquiry contemplated by *Aronson*—whether the directors have acted in conformity with the business judgment rule in approving the challenged transaction").  In this situation, the second prong of the *Aronson* test is eliminated, and the proper inquiry, as agreed by the parties, becomes whether the "particularized factual allegations of [the] complaint create a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  *Id.* at 934; *Kenney*, 426 F. Supp. 2d at 1181 (applying the *Rales* test).  Under Delaware law, the court must apply this demand analysis to the board in existence at the time the complaint was filed—in this case, Stephenson, Butler, Norton, Yates, and Zschau. *Rales*, 634 A.2d at 934.

Plaintiffs argue that the demand requirement is excused in this case because they have alleged facts sufficient to demonstrate demand futility.  Specifically, plaintiffs contend that they have alleged with sufficient particularity facts creating a reasonable doubt that a majority of StarTek's Board at the time the Complaint was filed was either disinterested or independent.  These arguments are addressed in turn.

### 1. *Interest*

Under *Rales*, plaintiffs can establish demand futility by creating a reasonable doubt that a majority of StarTek's Board would have been "disinterested" in evaluating

a pre-litigation demand.  634 A.2d at 934.  A director is considered interested "if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders."  *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995).  Thus, a director who is charged with deciding whether to bring a derivative suit naming himself or herself as a defendant "is potentially interested because he could face personal liability."  *Kenney*, 426 F. Supp. 2d at 1181.  However, the "mere threat" of personal liability in the derivative action as a result of being named as a defendant does not suffice to establish a disqualifying interest.  *Brehm*, 746 A.2d at 257 n.34 (citing *Aronson*, 473 A.2d at 817–18).  Rather, only "a '*substantial likelihood*' of personal liability prevents a director from impartially considering a demand."  *Seminaris*, 662 A.2d at 1354 (emphasis added).  A substantial threat of personal liability for breach of fiduciary duty may be pled by setting forth particularized facts showing that a board member profited from improper stock sales or failed to oversee the company's compliance with legally mandated disclosure standards.  *Guttman v. Huang*, 823 A.2d 492, 503 (Del. Ch. 2003).

In this case, while plaintiffs argue that Stephenson breached his duty of good faith and loyalty to StarTek through illegal insider trading, plaintiffs' allegations against the three Outside Directors—Yates, Norton, and Zschau—are premised on their "causing or allowing" the release of improper information in the company's press releases and SEC filings and "fail[ing] to prevent and correct the dissemination" of such information.  Compl. ¶ 107(d), (e).  Thus, the allegations against Stephenson for illegal insider trading alone are insufficient, even if true, to undermine the disinterestedness of

a majority of the Board with respect to a presuit demand.  Rather, plaintiffs' attempt to

show demand futility hinges on the allegations against the three Outside Directors on

the Board, who were also members of the Audit Committee during the relevant period.

Defendants argue that plaintiffs are attempting to assert a "*Caremark* claim"

against the Outside Directors.  *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959

(Del. Ch. 1996).  Such claims are based on a board's failures of oversight and failure to

attend to its duties in good faith.  *Guttman*, 823 A.2d at 506.   According to the

*Caremark* court, a director has

> a duty to attempt in good faith to assure that a corporate information and
> reporting system, which the board concludes is adequate, exists, and . . .
> failure to do so under some circumstances may, in theory at least, render a
> director liable for losses caused by non-compliance with applicable legal
> standards.

*Caremark*, 698 A.2d at 970 (footnote omitted).

Plaintiffs, however, argue that the allegations against the Outside Directors

involve intentional misconduct, rather than a failure to monitor or supervise, and thus

are not governed by *Caremark*.  Plaintiffs contend that they "have alleged [in the

Complaint] that the Individual Defendants **knew** StarTek's actual financial status,

markets and present and future customer demand but nonetheless participated in

publicly building a facade of high customer demand to justify StarTek's expansion."

Pl.s' Opp. at 20–21 n.24 (emphasis in original).  Whether plaintiffs are attempting to

assert a *Caremark* claim for failure to monitor or an intentional misconduct claim for

knowingly participating in the release of false information, however, is immaterial

because under the applicable heightened pleading standard the Complaint is insufficient under either theory.

The relevant allegations against the Outside Directors include: (1) the Audit Committee is responsible in part for assisting the Board in "reviewing and discussing the Company's earnings press releases," Compl. ¶ 107(d); (2) the Audit Committee met approximately 17 times during the relevant period, *id.* ¶ 65; (3) the Audit Committee "recommended that the Company release improper information pertaining to the Company's business prospects," and the committee members thus "breached their duties by causing or allowing" the dissemination of such information, *id.* ¶ 107(d); (4) the Board met approximately 19 times during the relevant period, *id.* ¶ 65; and (5) the Board members breached their fiduciary duties by "fail[ing] to prevent and correct the dissemination of improper financial information relating to future business prospects." *Id.* ¶ 107(e); *see also id.* ¶¶ 47–49 (alleging that, because of their positions on the Board, the Outside Directors "knew the adverse, non-public information" about StarTek and "participated in the issuance of improper statements, including the preparation of improper press releases").

With these allegations, plaintiffs have failed to sufficiently plead a *Caremark* claim.  To prevail on such a claim, a plaintiff must prove that there was "a sustained or systematic failure of the board to exercise oversight." *Caremark*, 698 A.2d at 971.  A plaintiff must plead specific, non-conclusory facts to support a reasonable inference that "a majority of the directors consciously disregarded their duties over an extended period of time." *Kenney*, 426 F. Supp. 2d at 1182 (quoting *David B. Shaev Profit*

*Sharing Account v. Armstrong*, 2006 WL 391931, at *1 (Del. Ch. Feb. 13, 2006)); *Citron*

*ex rel. United Techs. Corp. v. Daniell*, 796 F. Supp. 649, 652–53 (D. Conn. 1992)

(applying Delaware law).  The *Caremark* court itself recognized that this theory is

"possibly the most difficult theory in corporation law upon which a plaintiff might hope to

win a judgment."  *Caremark*, 698 A.2d at 967.

The allegations involving StarTek's Audit Committee, of which the Outside

Directors were members, are substantially similar to the allegations against the audit

committee members that this Court found insufficient in *Kenney*—essentially, that the

outside directors failed to fulfill their duty to supervise and investigate company

information released to the public, including press releases.  This Court held in

*Kenney*:

> All that plaintiffs' Amended Complaint and Response ostensibly
> demonstrates is that [the nominal defendant company] had an audit
> committee and the four independent outside directors were members of
> this committee during the period where the accounting improprieties
> occurred.  That is not enough.  Plaintiffs produce no evidence of the role,
> if any, the Board or its members played in the internal processes of
> collecting and disseminating financial information.  They aver no facts
> showing how often and how long the Audit Committee met, who advised
> the committee, and whether the committee discussed and approved any
> of the allegedly improper accounting practices.  Which specific oversight
> duties did the independent outside directors neglect?  Which specific
> action did these directors fail to take?  Which specific red—or even
> yellow—flags were waved at the outside directors?

*Kenney*, 426 F. Supp. 2d at 1183 (internal citations and quotations omitted).  The only

additional information provided in the Complaint here that was not provided in *Kenney*

is the number of times the Audit Committee met and what its general responsibilities

were.  *Compare Kenney*, 426 F. Supp. 2d at 1184, *to* Compl. ¶ 65.  Such information is

insufficient to correct the fundamental problems with the complaint outlined in *Kenney*.

Like the *Kenney* complaint, there are no allegations in the Complaint at issue regarding

what was discussed at the 17 Audit Committee meetings, whether the committee

discussed the specific press releases at issue, who advised the committee, which

specific action the committee failed to take, and "[w]hich specific red—or even

yellow—flags were waved at the outside directors."  *Kenney*, 426 F. Supp. 2d at 1183.

        Without such allegations, plaintiffs cannot meet their burden of pleading with

particularity facts demonstrating the "specific failures" of the outside directors or that

they "consciously disregarded their duties over an extended period of time."  *Id.* at

1182; *compare In re Abbott Labs. Derivative Shareholders Litig.*, 325 F.3d 795, 808

(7th Cir. 2003) (applying Delaware law) (complaint that alleged facts regarding

numerous specific warnings the directors received and ignored over a six-year period

sufficiently asserted a *Caremark* claim).  Thus, plaintiff's allegations against the three

Outside Directors by virtue of their membership on the Audit Committee are insufficient

to show that these directors face a substantial threat of personal liability and thus

insufficient to create a reasonable doubt that they are disinterested.

        Plaintiffs also argue that, Audit Committee membership aside, the Board

members all face a substantial likelihood of liability based on their acquiescence in the

issuance of the allegedly false press releases.  *See* Pl.s' Opp. at 20.  Again, however,

there are only generic allegations regarding the directors' collective awareness of any

adverse, undisclosed information or their participation in the issuance of the press

releases.  As argued by defendants, plaintiffs instead rely on the directors' positions to

13

impute such knowledge and "fail to identify a single corporate document, conversation, or Board meeting that purportedly apprised any director, much less a majority, of the supposed adverse undisclosed information regarding StarTek's future business prospects." Def.'s Reply (Dkt. # 34) at 8.  Without such allegations, plaintiff has not adequately asserted a *Caremark* claim.

Assuming that plaintiffs are attempting to assert that a majority of the Board faced a substantial threat of personal liability based on a claim for intentional misconduct rather than a *Caremark* claim for failures of oversight, their attempt is similarly unsuccessful.  Rule 23.1 requires that a plaintiff do more than plead "[c]onclusory allegations that directors participated in, approved of, or acquiesced to the conduct in question, unsupported by specific facts." *In re Storage Tech. Corp. Secs. Litig.*, 804 F. Supp. 1368, 1375 (D. Colo. 1992) (citation omitted), *overruled on other grounds by Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997).  Rather, plaintiffs must plead particularized facts underlying their allegations that the directors knew of and participated in the misstatements. *See Citron*, 796 F. Supp. at 652 (noting the lack of "specific underlying allegations which substantiate the conclusions" that demand would have been futile); *see also Rattner v. Bidzos*, No. Civ.A. 19700, 2003 WL 22284323, at *10 (Del. Ch. Sept. 30, 2003) (discussing the conclusory nature of the complaint's allegations of insider trading by board members).

In this case, as discussed in detail above, plaintiffs at best make generalized, conclusory allegations that the Outside Directors knew that the press releases were false at the time they were issued.  There are no particularized allegations setting forth

the basis of such alleged knowledge or any motivation underlying the Outside Directors' alleged participation in the issuance of false statements. *Compare In re Oxford Health Plans, Inc.*, 192 F.R.D. 111, 115 (S.D.N.Y. 2000) (applying Delaware law) (describing sufficiently pled allegations that the directors were concerned about harming the market price of the company's stock and jeopardizing their "personal and financial interest in the subject matter of the claims"). Again, plaintiffs rely heavily on the mere fact of the Outside Directors' positions on the Board to substantiate the allegation that they "knew the adverse, non-public information about the business of StarTek" when they "participated in the issuance of improper statements." Compl. ¶¶ 47–49. These assertions simply do not provide particularized facts underlying the Outside Directors' acquisition of the critical information that is the basis of the alleged improprieties, and thus fail to rectify the conclusory nature of those allegations. By failing to "allege with particularity what information the directors knew and how they acquired such knowledge," plaintiffs have not adequately pled a claim for intentional misconduct. *Rattner*, 2003 WL 22284323, at *10 n.53.

The Court further notes, as it did in *Kenney*, that none of the Outside Directors are named as defendants in the pending securities class action complaint, which "mirror[s] the present complaint" in that it includes allegations against the defendants therein for making false and misleading statements of material fact and omitting material facts to stockholders and the public. *Kenney*, 426 F. Supp. 2d at 1184; *see* Ex. 4 to Fukumura Decl. at 3. "This further undermines plaintiffs' assertion that [these directors] face a substantial likelihood of liability in the present action." *Kenney*, 426 F.

15

Supp. 2d at 1184.  In light of the Complaint's failure to plead particularized facts

supporting a theory of intentional misconduct, plaintiffs have not established that a

majority of the Board is interested even under their chosen legal theory.

In addition to allegations of the Board's disinterestedness based on potential

liability for breach of fiduciary duty, plaintiffs allege that the Board members are not

disinterested because, in bringing the suit themselves, they would risk application of an

exclusion of insurance coverage.  Compl. ¶ 107(n).  This argument was expressly

addressed and rejected as a matter of law in *Kenney*.  426 F. Supp. 2d at 1184 (noting

that "this argument fails because it is but 'a variation[] on the "directors suing

themselves" and "participating in the wrongs" refrain'") (quoting *Decker v. Clausen*,

1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (alteration in original)).

For the foregoing reasons, the Court holds that the Complaint contains

insufficient allegations to undermine the disinterestedness of a majority of the Board, as

required by *Rales* to excuse demand as futile.  *Rales*, 634 A.2d at 934.  Plaintiffs have

not pled particularized facts showing that at least three of the five directors face a

substantial likelihood of liability, and thus have failed to create a reasonable doubt that

a majority of the StarTek Board would have been disinterested in evaluating a pre-

litigation demand.

## 2. *Independence*

Notwithstanding their failure to sufficiently allege the existence of a reasonable

doubt that a majority of the Board was disinterested, plaintiffs nevertheless can

establish demand futility under *Rales* by properly alleging that a majority of the StarTek

16

Board at the time the Complaint was filed was not independent.  A director will be considered independent if his "decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816.  On the other hand, a plaintiff can establish a lack of independence by showing that the directors are "beholden" to other interested directors or "so under their influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936 (citing *Aronson*, 473 A.2d at 815).  "Independence is a fact-specific determination made in the context of a particular case." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1049 (Del. 2004); *Kenney*, 426 F. Supp. 2d at 1185.  "A party alleging domination and control of a company's board of directors bears the burden of proving such control by showing a lack of independence on the part of a majority of the directors." *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002).

A director may be controlled by another person if that person has "the direct or indirect unilateral power to decide whether the director continues to receive a benefit upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider" the merits of the demand objectively. *Id.*  Furthermore, "[a] stockholder's control of a corporation does not excuse presuit demand on the board without particularized allegations of relationships between the directors and the controlling stockholder demonstrating that the directors are beholden to the stockholder." *Beam*, 845 A.2d at 1054.

Plaintiffs first attempt to establish that Stephenson dominated and controlled the entire Board in an attempt to create a reasonable doubt about its independence.  *See* Compl. ¶ 107(a)–(c), (f).  As plaintiffs concede, the fact that Stephenson and his family controlled 22.9% of StarTek's stock at the time suit was filed is not enough in and of itself to establish a lack of independence on the part of the rest of the Board.[2]  *Kenney*, 426 F. Supp. 2d at 1186 (citing *Aronson*, 473 A.2d at 815) ("[S]tock ownership alone, at least when it amounts to less than a majority, is not sufficient to prove domination and control.").

Plaintiffs, however, argue they have sufficiently pled additional facts demonstrating Stephenson's domination and control.  For example, plaintiffs point out that the February 17, 2004 registration statement discloses that Stephenson and his wife "will continue to be our largest stockholders and together may be able to elect our entire Board of Directors and to control substantially all other matters requiring action by our stockholders." Compl. ¶ 107(c).  Plaintiffs also rely on a disclosure in a Form 10-K issued by the company that, based on his percentage of ownership, Stephenson may call a special meeting of the stockholders and "may discourage, delay or prevent a change in control that might otherwise benefit our stockholders."  *Id.* ¶ 107(b).

As noted by this Court in *Kenney*, however, such disclosures are routine and "merely state[ ] the obvious" about the potential influence of plurality stockholders.

_____

[2] Plaintiffs' allegation that Stephenson owned and controlled more than 66% of StarTek's stock until the initial public offering is legally irrelevant to the independence analysis.  Because demand futility is judged by the circumstances at the time the derivative suit is filed, plaintiffs are bound by their own disclosure that, at that time, Stephenson and his family only owned 22.9% of StarTek's stock.  Compl. ¶ 107(b); *see Aronson*, 473 A.2d at 810.

426 F. Supp. 2d at 1186.  In other words, such statements are "not much different than an admission that [Stephenson and his family] are beneficial owners of a sizable portion of [StarTek] stock, and, without more, [are] insufficient to create a reasonable doubt that the independent outside directors acted independently from [Stephenson]." *Id.* at 1187.  Nor do plaintiffs' conclusory allegations that Stephenson "exercised complete domination and control over StarTek's Board" amount to particularized facts demonstrating that Stephenson's "control" prevented the Outside Directors from exercising the independence necessary to consider a demand objectively.

Moreover, there are no particularized allegations that Stephenson had the "unilateral power to decide" whether the Outside Directors continued to receive a benefit upon which they were "so dependent or [which was] of such subjective material importance that its threatened loss might create a reason to question whether" the Outside Directors could consider the demand objectively.  *Meyerson*, 802 A.2d at 264. Assuming Stephenson had the power to replace members of the Board, a director's incentive to maintain his or her position and salary is insufficient to excuse demand. *Citron*, 796 F. Supp. at 653.  And even if such an incentive were sufficient, there are no allegations that membership on the Board was of considerable importance to any of the Outside Directors.  Although plaintiffs argue in their opposition that the directors would not bring a lawsuit "because it would affect the substantial compensation they receive as a result of such position," Pl.s' Opp. at 26, there are no corresponding allegations in the Complaint regarding the amount of compensation the Outside Directors received or whether such compensation was of material importance to them.  Thus, plaintiffs have

19

failed to allege with particularity that Stephenson dominated and controlled the Board in such a manner as to undermine the independence of the Board members, particularly the Outside Directors.

Plaintiffs also attempt to undermine director independence by alleging the existence of personal relationships between various Board members.  However, courts generally have declined to hold that personal or business relationships overcome a director's presumed independence unless the relationships are substantial.  *E.g.*, *Beam*, 845 A.2d at 1050 ("Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence.").  A complaint must allege, with particularity, facts indicating that a relationship is so close that there could be reasonable doubt that the director will act independently.  *Id.* at 1051.  The fact that a close friend may face civil or criminal liability is a factor in this analysis.  *Id.* at 1050.  "To create a reasonable doubt about an outside director's independence, a plaintiff must plead facts that would support the inference that because of the nature of a relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director."  *Id.* at 1052.

In this case plaintiffs fail to allege relationships serious enough to raise questions as to the independence of a majority of the Board.  The alleged relationships among the Board members include: (1) directors Zschau and Brown are long-time acquaintances who served in the House of Representatives during an overlapping

20

period in the 1980s; (2) Zschau was Stephenson's professor at Harvard; (3) Norton recruited Brown to the University of Northern Colorado while she served as a trustee there, and Norton later succeeded Brown as president of UNC; and (4) Yates and Norton are both from Greeley and are both "involved in the academic circle in Colorado." Compl. ¶ 107(f).

These allegations fail entirely to suggest the existence of any relationship between any of the directors extending beyond the level of an acquaintance, much less a relationship that is "so close" as to undermine their independence. Even assuming some of the Board members were more than just acquaintances, the allegations involve, at best, "mere personal friendship[s] or . . . mere outside business relationship[s]" that are insufficient to raise a reasonable doubt about the directors' independence. *Beam*, 845 A.2d 1050.

In sum, the Court finds that none of the alleged relationships are pled with sufficient particularity to raise doubt about the independence of the three Outside Directors. Specifically lacking are allegations of any particularized facts to show that any Outside Director was beholden to Stephenson or that there was a substantial relationship among any of the Board members. Thus, the Complaint fails to allege facts undermining the independence of a majority of the StarTek Board.

### 3. *Totality of the Circumstances*

Finally, plaintiffs contend that "a consideration of the totality of the circumstances . . . confirms that demand was futile." Pl.s' Opp. at 25. Assuming such an inquiry is appropriate, which the Court need not address, plaintiffs' contention is

unpersuasive.  Considering all of plaintiffs' conclusory allegations together, along with their unsupported allegations of director interest and lack of independence, which have been rejected as a matter of law, does not overcome the deficiencies identified in the allegations when considered separately.  Accordingly, the Court holds that, based on the totality of the circumstances, plaintiffs' allegations are insufficient to demonstrate that demand was futile.  Because plaintiffs failed to make a pre-litigation demand on StarTek's Board and because that failure was not excused, plaintiffs' Complaint must be dismissed, and StarTek's motion to dismiss is granted.

### B.  Defendants' Other Procedural Claim

Defendants claim that plaintiffs failed to sufficiently plead that they were shareholders during the relevant period in accordance with Federal Rule of Civil Procedure 23.1.  However, because plaintiffs have failed to make a pre-litigation demand on StarTek's Board and failed to allege facts demonstrating that demand would have been futile, it is unnecessary to consider the merits of this claim.

### C.  Defendants' Request for Judicial Notice

StarTek and the Individual Defendants filed a Request for Judicial Notice in support of their motions to dismiss (Dkt. # 15), asking the Court to judicially notice four documents:  StarTek's Restated Certificate of Incorporation, a Schedule 14A Information Proxy Statement, a Form S-3 Registration Statement, and the consolidated complaint filed in the related securities class action.  The Court has already held that judicial notice of the class action complaint is appropriate, *see supra* note 1.  Because the Complaint in this case is subject to dismissal without any need to consult the other

documents listed in the motion, the Court need not decide whether judicial notice is appropriate with respect to the remaining documents in the request.

## III.  THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

In light of this Court's finding that plaintiffs failed to adequately plead demand futility, it is unnecessary to evaluate the merits of the Individual Defendants' Motion to Dismiss, which is denied as moot.

## IV.  CONCLUSION

For the reasons stated above, the Court hereby ORDERS as follows:

1.      Nominal Defendant StarTek's Motion to Dismiss Plaintiff's Consolidated Shareholder Derivative Complaint (Dkt. # 11) is GRANTED;

2.      The Individual Defendants' Motion to Dismiss Plaintiff's Consolidated Shareholder Derivative Complaint (Dkt. # 13) is DENIED AS MOOT; and

3.      The Clerk shall enter judgment dismissing this action with prejudice in accordance with this Order.

DATED:  October 1, 2007.

BY THE COURT:

s/ Phillip S. Figa
_____
Phillip S. Figa
United States District Judge